## Paul v. Squibb.

1. Constructive notice of title is not sufficient to postpone the owner of land to a purchaser having equal notice, because the owner, knowing of the intended sale, permits it without objection. There must be actual knowledge of his right, or positive acts inducing the purchase, to postpone him.

2. Land held by husband and wife having survived to the wife, who was actually ignorant of her title, and it being necessary that some part of the husband's realty should be sold for payment of debts, the co-administrator applied for and made a sale, under an order of the Orphans' Court, of the survived estate, because the widow and administratrix desired this should be sold, rather than other land belonging to the husband, both parties being alike ignorant of the real state of the title. The administrator, with others, became the purchaser: her title is not thereby divested.

3. Nor by her agreement with the administrator, that the surplus purchase-money, if any remained after paying a debt, should be applied to the estate, and that the purchase should be a satisfaction of that debt at all events, where he was not induced thereby to make the purchase.

In error from a Special Court of Common Pleas of Fayette.

Ejectment. The plaintiffs were heirs of Ann Squibb. They showed a conveyance of the premises to C. Squibb and Ann Squibb, his wife, *habendum* to them, their heirs and assigns. C. Squibb died, his wife surviving. The defendant proved the grant of letters of administration on the estate of C. Squibb, in 1820, to Ann Squibb, his widow, and Jacob Matthiot. In 1826, on the petition of Matthiot, administrator, the premises were sold to Rogers, under an order of the Orphans' Court, for the payment of the debts of C. Squibb, and a conveyance made by Matthiot, the administrator. On the same day, Rogers conveyed to Jacob Matthiot, Meason, and Paul (the defendant). In 1833, they entered into articles for the

sale of the property to Foster. His interest was sold by the sheriff to Veech in 1842, and he conveyed to Paul in 1845, who also acquired the legal titles of Meason and Matthiot by conveyances in 1847. The sale to Rogers was for $900. The debt due to him was $1360.

The defendant further proved by Matthiot, that after the death of C. Squibb it was ascertained some of his real estate (he owned the premises in question and certain salt works) must be sold; and the widow was desirous of retaining the salt works, if possible; and it was thought this might be done by selling the other real estate. This sale would not have been sufficient to pay the debts, but for an arrangement between Mrs. Squibb, and Meason, and Matthiot, by which the premises in question should be taken in satisfaction of a debt due from the estate to Rogers, of which Matthiot, Meason, and Paul had the control, if it brought less than that amount; if more, the estate was to receive the surplus. Mrs. Squibb lived on the premises until the sale, and spoke of it frequently, preferring the sale of this property, as there was no alternative, but to sell one or the other. But she had no conversation with Rogers; the arrangement with him was made by Meason, as agent of Matthiot, the administrator. Nor did she ever allude to it as her property: both of them spoke of it as her husband's.

Another witness stated, that Mrs. Squibb, about the time of the sale, said they were going to sell the salt-works from her, but she had got Matthiot to stop that sale, and sell these premises; but she did not speak of them as her property.

On the part of the plaintiffs, Rogers stated that he had purchased as the agent of Meason, Matthiot, and Paul, paying no money, but immediately transferring the title to them; and that Mrs. Squibb was not present at the sale.

It was also proved that improvements had been made on the premises; but there was nothing showing Mrs. Squibb's knowledge of the fact, whilst they were in progress.

And further, that a credit had been entered by Meason, Matthiot, and Paul, on their judgment against Rogers, to the full amount of the debt due by the estate to Rogers.

HEPBURN, P. J., instructed the jury, that the principle, that a trustee could not purchase at his own sale, was strictly applicable; for it was not pretended a title was acquired under the Orphans' Court proceedings alone, since C. Squibb, whose property was ordered to be sold, had no title.

That both parties had constructive notice of the title, and to postpone the true owner there must be, 1st, a purchaser believing he was buying a good title; 2d, an owner knowing of his own title, unless the purchaser was misled by positive acts of the real owner. The presumption was, that the purchasers were actually ignorant of the defect, and that Mrs. Squibb actually knew her own title; but this might be rebutted, and was a question for the jury.

That permitting improvements, or the sale, knowing it was to be made, if in ignorance of her own right, would not postpone Mrs. Squibb.

As to her positive acts, her requests to Matthiot to sell this rather than another property, would not affect her unless they came to the knowledge of the purchaser (Rogers), and influenced his actions. It was mere conjecture to say whether the sale would not have taken place but for these conversations. The fact that Rogers was but the agent of Matthiot and the others, and that the conversations were had with one of his principals, did not affect the case, because he was the administrator and bound to know whether he was selling Squibb's property, unless, knowing Mrs. Squibb's title, he was misled by her representations. That Matthiot knew he could only get a voidable title because of the trust, and his co-purchasers were affected by this.

As to the rights derived through the subsequent conveyances, the law was the same, viz., if she, knowing of her title, permitted the sales without giving notice, she would be postponed.

*Fuller* and *Veech*, for plaintiffs in error.—There was no evidence that Mrs. Squibb was ignorant of her title, and the presumption of law is against it. Nor was Matthiot bound to know that he could not acquire a good title. The right of a trustee to purchase through a third person, had been decided, 1 Yeat. 313, 2 Ib. 118, and had been mooted as late as 7 W. & S. 152. Here the proof as to his belief was the contrary. The ignorance of Mrs. Squibb was immaterial, and she is bound by her acts of encouragement: 13 S. & R. 304; 2 Pa. Rep. 19. It was in fact a parol sale by her, accompanied with delivery of possession; and she cannot now set up her title, though unknown, having derived a benefit by the sale: 2 Rawle, 420; 1 Ib. 163; 8 Watts, 280.

*Miller* and *Howell*, contrà.—There being constructive notice of the title, the fact of notice cannot be controverted, 5 Barr, 134;

and the purchaser, in spite of that, is guilty of *mala fides :* 8 S. & R. 497. Unless, therefore, they can show that their acts were occasioned by her acts, they have no case : 2 Pa. Rep. 22. The positions of an owner and purchaser are different in this respect : the latter always inquires ; the former may be ignorant of the act which devolves the right on him. It is not sufficient to establish a fraud to begin by presuming knowledge in her. If there was a fraud in her, there was an equal one in Matthiot seeking to avoid the policy of the law. As to the parol sale, it is sufficient that the clear intent was to sell and buy the husband's title, not the wife's.

Gibson, C. J.—Constructive knowledge of an undisclosed right is not enough to charge the party with concealment. Suppression is a positive act of bad faith, of which no one can be ignorantly guilty ; and fraud committed by means of it, is consequently actual, not constructive. True, the title of a party who ignorantly encourages another to purchase, will be postponed ; not however for fraud, but for having occasioned a loss which must be borne by some one, and consequently by the author of it. But if constructive notice were material, these parties would be equally affected with it ; for they derive title under the same registered deed ; and as both were actually ignorant, they stand upon a level. The question then is whether Mrs. Squibb, herself an administratrix and the owner of the sound title, did any act to encourage Matthiot to purchase the unsound one at his own sale.

The sale was ordered on the petition of the administrator, who conducted it and became himself the actual though not the ostensible purchaser of the decedent's title. She doubtless knew of it, for she lived on the premises when it was made ; but there is no evidence that she uttered a word or was present on the occasion. She assented to the order and sale, as every bystander assents to a sale who does not protest against it. She assented to a sale of her husband's title, not her own ; and the title she had was founded on a recondite principle of the common law, which even a learned conveyancer might overlook. Every one is presumed to know the law ; but the presumption is not strained so far as to charge him with an act of immorality, especially when the complainant had the same means of knowledge and was equally implicated. She was not bound therefore to protest against the sale at her peril. She was an administratrix only in name, and she was consulted as the mother of the family, as she would have been had her name not

been in the letters of administration. A sale of some part of the land had become unavoidable for payment of the debts; and as she expressed a desire to retain the salt-works for the support of the children, it is argued that she was the indirect cause of the loss from the purchase and sale of the rest. But she was not the active and proximate cause of it, and no case proves that she is chargeable with it as the passive and remote one. There would be no end of refinement in regard to cause and effect if the law were otherwise. But the rule is founded on the most exact principles of moral accountability, and no man is answerable by it for what he could not prevent. Why is not the title of an ignorant bystander at a sale forfeited by silence? Because he is morally unable to speak out. Mrs. Squibbs's advice to retain the salt-works, therefore, was not such an interference in procuring a sale of the property in contest as would postpone her title to it.

But it is contended that she positively encouraged the sale of it by agreeing that Matthiot should account to the estate for the surplus purchase-money after payment of the debt to Rogers, his agent to bid in the property. From the nature of the arrangement, it must have been proposed by Matthiot himself, who needed no incitement, and who purchased of his own head, the sanction of Mrs. Squibb having regard to a matter subsequent to the sale—an application of the surplus purchase-money. She barely assented to the sale, and, dealing with good faith, she could not be entrapped by a participation which was purely passive. Besides, Matthiot was a purchaser at his own sale, and his associates stand on no higher ground. No doubt he was as ignorant of her title as she was herself, but having gained her assent to an illegal transaction in which he was an actor, he, or any one under him, cannot turn it against her.

Judgment affirmed.